CARRIE EDDY, Appellant, *v.* ALICE P. CHURCH, Respondent.

(County Court, Saratoga County, June, 1909.)

Evidence — Admissions — Scope of admissions and evidence explanatory of admissions — Evidence explanatory of admissions.

> In an action to recover the price of milk alleged to have been sold and delivered to a married woman, where she defends upon the ground that the milk was in fact sold to her husband, who kept a boarding-house, and where letters of the defendant were introduced by plaintiff admitting her liability and a book kept by plaintiff was introduced by the defendant in which the goods were charged to defendant's husband, it was error to refuse permission to the plaintiff to explain the method of keeping accounts by which the charge was made to defendant's husband rather than to the defendant.

APPEAL from a judgment of a justice of the peace.

James A. Leary, for appellant.

James W. Lester, for respondent.

ROCKWOOD, J.  The complaint in this action avers the sale and delivery to defendant of milk of the value of three hundred and fifty-six dollars, upon which a balance is claimed of seventy-one dollars and interest, and it is alleged that the account was settled and adjusted between the parties in August, 1907, at seventy-one dollars.

The defendant interposed a general denial with separate defenses of payment and the Statute of Limitations.

The trial was had before a justice of the peace, without a jury, who rendered judgment for the dismissal of the complaint, with costs against the plaintiff, who has appealed to this court.

The milk was sold and delivered by John M. Eddy, plaintiff's assignor, and he testified that the defendant had told him on one or more occasions that she was running the boarding-house where the milk was used; also, that he had made collections from the defendant from time to time, and that, on one occasion when the account stood at eighty-three dollars, he had submitted to defendant an itemized statement of the same, and that she then paid him five dollars, admitting that the account was correct and stating that she would pay it. This witness further stated that he had never had any conversation with Doctor Church, the husband of the defendant, about the delivery of milk.

The principal question litigated at the trial was not whether the milk had been delivered, or its value; but the liability of the defendant therefor; it being contended by her that her husband, Doctor Church, was liable for the same, if any liability existed, and that she herself was not responsible for the amount.

It was shown on behalf of plaintiff that the account was finally placed in the hands of a lawyer named Randolph for collection, who wrote to the defendant about it, requesting payment, and received from her a letter reading as follows:

"(Exhibit 'D')

"(Postmarked *April* 6, 1905.)

" Mr. Frederick P. Randolph, ·

" 206 Broadway,

" New York City.

" Mr. Randolph:

" Dear Sir.— I have just written to your client Mr. Eddy who is an old friend of ours — asking him to wait a few days and I think you will hear soon from him and please do

not begin proceedings until you hear again as I should be ill from worry and then not able to pay. If you can arrange to see me here or at your office I will plan to meet you after you hear from Mr. Eddy. Never having had quite such a fierce letter I suppose I am easily frightened but I enjoy more than anything paying my bills, but it is rather impossible to pay 84 at once as you insist upon my doing.

" Thanking you in advance for an extension of time, I am

" Cordially,

"Alice L. H. P. Church."

At about the same time the defendant also wrote to the assignor of the plaintiff a letter, reading as follows:

"(Exhibit ' B ')

"(Postmarked *April* 6, 1905.)

" Mr. John M. Eddy,

" Saratoga Springs, N. Y.

" Mr. Eddy:

" Dear Sir.— I have just received a threatening letter from a Mr. Randolph saying you were going to prosecute or something like that if I did not pay at once $84 for milk. I can't think you know of it and write to ask you to please wait until I get to Saratoga about the 15 of May. I will then see you at once and arrange to pay you just as soon as possible after that and will surely pay it all by August. My mother has been ill almost all winter and was in the hospital — is now at Elmwood Hall — it would worry her ill again if she knew I had been threatened and if you sue me she will I know be ill again. I have been doing well this winter teaching but paying rent in three places have not been able to do all I wanted to. I feel sure you will ask Mr. R. not to begin proceedings the 10 of this month against me please as I would have to go to some one and ask what to do. Your friends the Fishers are coming to Saratoga again. They always ask so kindly of you. Will you let me know please at once if you will wait a few weeks.

" Cordially,

"Alice Church."

The defendant then conferred with Mr. Randolph as to the account, in which conversation she did not deny her personal liability for the amount thereof.

In the letter to Mr. Randolph of April 6, 1905, the defendant clearly recognized her liability by the statement " I enjoy more than anything paying my bills, but it is rather impossible to pay 84 at once as you insist upon my doing," etc.

The defendant, in her own behalf, claimed that she had never had any conversation with plaintiff's assignor. She denied having made any contract with him and stated that the payments made were with moneys given her by her husband for that purpose. Asked to explain her letters to Mr. Randolph, she said that her mother was ill at the time and that she preferred to pay the bill rather than run the risk of having her mother annoyed by knowledge of the transaction.

Defendant further contended that she did not purchase milk of plaintiff's assignor, John M. Eddy; that the boarding-house was conducted by her husband, Dr. George T. Church, and that, although she worked there and sometimes received rent from boarders, she always accounted to her husband for it; she testified that she had seen milk bills rendered to her husband by plaintiff's assignor on different occasions.

The proof of plaintiff's account must depend entirely upon the admissions testified to, as the account book offered and received in evidence was not the book of original entry and was not properly proven.

The defendant offered in evidence this account book, at page 10 of which it appeared that the account was charged to " Dr. Church; " and this particular entry seems to have been the disputed point in the case, for, in his opinion, the justice of the peace states: " In this book the account sued upon appears under the name of ' Dr. Church,' who was the husband of the defendant. So that it appears from the books of plaintiff's assignor that the account was one against the defendant's husband. Therefore, the promise of the defendant to pay could not be considered an account stated and

the promise to pay on the part of the defendant did not make her liable for the debt.

As this one fact apparently had such great weight with the justice, it must be conceded that, if the court erred in excluding evidence offered by the plaintiff to explain the entry, it is not one of those errors which may be overlooked and disregarded. Upon the question as to the admissibility of these facts the case of Van Fleet v. Ketcham, 6 N. Y. St. Repr. 72,— a decision of the General Term, Second Department — is clearly in point. That was an action upon an account in which, in his books, the plaintiff charged the goods purchased to one Buck, who occupied defendant's farm. Evidence was offered tending to show that the defendant authorized Buck to make the purchases, the plaintiff to deliver the goods. Upon the question as to the effect of the entry in the name of Buck, the court used this language, which is directly germane to the issues here:

" The plaintiff, however, charged the goods upon his books to Buck. This fact is not conclusive against his right to recover.

" The court will look at all the surrounding circumstances with a view to ascertain the intent of the parties. That the plaintiff intended to hold the defendant, the sole owner of the farm and stock, liable for the goods, seems reasonably clear from the evidence and the jury have so found."

And again, in the same opinion, the court, speaking of the admissibility of evidence explanatory of the entry, said: " The exceptions to the rulings of the court as to the admission were not well taken. *It was competent for the plaintiff to explain his system of bookkeeping and show why he made the charge* to Buck instead of the defendant. The plaintiff was not endeavoring to prove a custom, but only to explain his own book." Citing Arnold v. Allen, 9 Daly, 198; Meeker v. Claghorn, 44 N. Y. 349; Foster v. Persch, 68 id. 400.

The Van Fleet case would seem to decide that the refusal of the justice to admit evidence explanatory of a system of bookkeeping was error to the prejudice of the plaintiff.

To the same effect is the case of Field v. Knapp, 108

N. Y. 87. The court refused to permit the plaintiff in this case to explain the method of keeping accounts by which this account was charged to "Dr. Church" rather than to the defendant. This was clearly error, particularly in view of the written admissions of the defendant, above referred to; and, in view of the importance attached to this phase of the case by the justice, it was such an error as directly affected the result.

The evidence was also admissible upon another theory. The book was offered by the defendant as against the plaintiff for the purpose, apparently, of treating it as an admission by plaintiff that the account was against Doctor Church and not against the defendant. It is the rule that a person against whom an alleged admission has been offered should usually be allowed to explain words and phrases in the statement which is charged against him as an admission. The question asked by plaintiff's attorney, and which the justice excluded, was this: "How do you account for the name 'Dr. Church' being written at the top of the account? [Objected to as the book speaks for itself and that he cannot testify after ten years as to what they say. Sustained. Further objection as to his explaining entries made under his direction in his own book; they speak for themselves. Objection sustained.]"

Although this question may not have been framed in the best possible form, yet the principal objections to it were that the book spoke for itself and that it was an attempted explanation of the entries therein by the plaintiff. There was no objection to the form of the question, and the ruling of the court in sustaining this objection was a direction to the plaintiff that evidence explanatory of the entry would not be received.

The point in dispute was for milk actually furnished to the boarding-house which the defendant was apparently conducting. When asked for the amount of the bill, she sought an extension of time and promised to pay. There was no contention at this time that she did not owe the bill. Subsequently, when sued, the defendant seeks a release of liability by proving that the plaintiff's assignor, upon a book of

account, had charged the entries to defendant's husband. The plaintiff was entitled to explain this and should have been permitted to do so. Upon the written letters of the defendant this court is also clear that the verdict is against the weight of the evidence, for which reason the judgment is reversed and a new trial is directed to be had before the justice of the peace who decided this case, at his office in the town of Saratoga Springs, N. Y., on the 24th day of June, 1909, or at such adjourned date, convenient to the justice, as may be agreed upon by the parties hereto; and, as the costs of this appeal are in the discretion of the appellate court, the plaintiff may recover ten dollars costs on this appeal, with disbursements to be added.

Let judgment be entered in accordance therewith.

Judgment accordingly.